United States District Court Clerk's Office
District of Massachusetts
1 Courthouse Way
Suite 2300
Boston, MA  02210

FILED
IN CLERKS OFFICE

2008 DEC 15  P 12: 18

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Action
No. not assigned yet

Plaintiff, Cathy Morrison, Pro Se Litigant

v.                        08 CA 12100 PBS

Defendant, Boston bar Association/Foundation and Heather Leary

**Complaint**                MAGISTRATE JUDGE Alexander

Parties

1. The plaintiff is a resident of Boston, Massachusetts, and a citizen of the United States of America.

2. The defendant Boston Bar/Association/Foundation is an organization to operate in Boston, Massachusetts in the United States of America.

3. The defendant, Heather Leary, Esquire is a resident of Boston, Massachusetts, and a citizen of the United States of America.

Jurisdiction

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

1

Facts

On Monday, June 18, 2007, Plaintiff, Cathy Morrison started her first of employment day at the Boston Bar Association as Data Entry Coordinator. Plaintiff was singled out and harassed upon hire with lots of detailed inappropriate comments made against her in public and conspiring moments to destroy her soul and right to work in a harassed free environment all in the sake of the plaintiff trying to make a decent living for herself, color, and race – ethnicity: African/Native American.

During the 4th week of June 2007, Patricia Mazurkiewicz, Human Resource Manager had it in for Cathy Morrison by telling Heather Leary, Esquire, Director of Membership and plaintiff's immediate supervisor confidential benefit information of plaintiff's electronic payroll distribution and medical reimbursement confidential personal business.

1. Jennifer Smith, Invoicing and Accounts Receivable Coordinator and Joanne O'Hara, Data Entry Assistant both were against plaintiff's appearance by adversely not wanting to assist plaintiff with questions that plaintiff was directed to ask by consultant, John Fumicelo (as Directed by Heather Leary) whom plaintiff had worked closely with due the problems prior to plaintiff's arrival.

2. Joanne O'Hara confessed directly to plaintiff in Joanne's office that Joanne O'Hara was retaliating against Bruce for not supporting her flower business since Bruce Hiltunen, Director of Finance & Administration did not approve Joanne's purchase order for Joanne's personal flower business to support the BBF and apologized for her behavior because the right person should pay which was Bruce Hiltunen and confessed to sabotaging the work flow for her losses and plaintiff should not have to suffer. However, Jennifer Smith spoke to plaintiff like she was a dog and made false accusations that plaintiff was not working. Later, Jennifer confessed to Patricia Mazurkiewicz in Patricia's office with the door open that she lied on plaintiff and should have not done such an act because of the word *"Queen Bee"*. The word *"Queen Bee"* is systematically traveling from employer to employer to promote retaliation, harassment, and a hostile work environment. The whole organization knew of Joanne O'Hara's knowledge and no adverse collaborative efforts have been taken against Joanne O'Hara or Jennifer Smith.

On **Monday, August 6, 2007** approximately around 2 p.m. Plaintiff, Cathy Morrison was working quietly and professionally at her original cubicle on the 3rd floor. Plaintiff was working with John Fumicelo, (former employee) consultant and Christopher "Chirs" LaVancher, Database & Information Systems Manager to discuss the current problems with the work flow and previous software problems due to the fact that BBA/BBF intentionally cancelled their contractual agreement with Go Members due to the purchase of the new software Aptify to go

2

live in the late Spring of 2008. Due to the cancellation of Go Members the old software was not functioning properly and promoted delayed time in processing and promoted the system to crash frequently.

1. Heather Leary, Esquire, Director of Membership, and plaintiff's immediate supervisor was called to the 3rd floor by Deborah Gibbs, Esquire, and Director of Government Relations. Heather Leary, Esquire, Director of Membership, and plaintiff's immediate supervisor maliciously started slandering and making false statements about plaintiff in front of plaintiff, Deborah Gibbs, Esquire, and Director of Government Relations, Georgia Katsoulomitis, Esquire, and Managing Director of BBF/Assistant Director of BBA, Maria Fernandes, Administrative Assistant to Deborah Gibbs, Kathleen Tighe, Administrative Assistant to Georgia Katsoulomitis, John Fumicelo, (former employee) Consultant, Christopher LaVancher, Database & Information Systems Manager that plaintiff was liar, dishonest, not working, and Heather Leary boldly stated that she had only one motive to hire plaintiff which was to pay plaintiff back for Morrison v. Winsor case pending in Suffolk Superior court house and fire to plaintiff because of plaintiff's color "black" and race and Heather Leary boldly bragged that she will be supported by retaliating against plaintiff because Heather proclaimed to be white superior and had Jessica Hamilton (black), Member Relations Coordinator word to be in on the set up of getting plaintiff fired and shielding that race and color was an issue.

2. Heather Leary, Esquire, Director of Membership and immediate supervisor of plaintiff started bragging about suing the Boston Bar Association because she was sick of Richard Page Jr., Esquire, and Executive Director of BBA/BBF and Bruce Hiltunen, Director of Finance & Administration bullshit and was going to use her gender and privileges of being white against them and everybody except plaintiff knows black people never win at the EEOC/MCAD, but white people do win. Heather again stated "Jessica Hamilton gave her the word to set up plaintiff since Jessica too was retaliating for Jessica's mother whom the plaintiff does not even know.

3. Heather maliciously stated that she begged Richard Page, Jr., Esquire, and Executive Director of BBA/BBF to change who the plaintiff reports to with a motive upon hire so that Heather can intentionally retaliate against plaintiff. Plaintiff was supposed to report to Bruce Hiltunen, but suddenly plaintiff was notified by Patricia Mazurkiewics, Human Resources Manager of the change prior to receiving confirmation of employment letter. In addition, all previous Data Entry Coordinator's have reported to Bruce Hiltunen in the past and current Data Entry Assistant, Joanne O'Hara, please see original job description distributed to plaintiff before receipt of confirmation of employment letter in Exhibit A.

4. Plaintiff replied in front of all witness above that if Heather Leary, Esquire, Director of Membership, and immediate supervisor took such actions to promote a hostile environment or set plaintiff up - plaintiff will file a lawsuit against the Boston Bar Association/Foundation and eventually Heather Leary after filing against institution if applicable. Plaintiff also recommended that Heather's statements should not interfere with plaintiff's right to be legally employed at the BBA because of Heather's own frivolous and malicious motives. Please note plaintiff has never met or seen Heather Leary in her life to enable Heather Leary's hostile attacks or formed opinions.

5. John Fumicelo directly after plaintiff's comment in paragraph number 4 above stated "no one should have to jump through hoops just to do their job" and stated "support of plaintiff and plaintiff's work by saying I know what I just heard."

6. Christopher LaVancher directly after John's comment in paragraph 5 above stated "I know what I just heard."

7. The week of September 24, 2007, there was no work being done since Go Members was down all week which prompted a meeting on Thursday, September 27 or Friday, September 28, 2007 where Jessica Smith, John Fumicelo, and Christopher LaVancher all confessed to Richard Page, Executive Director that Heather Leary's statement on Monday, August 6, 2007 was true. Jennifer Smith stated that Jennifer was not in the building on Monday, August 6, 2007, but heard every word. Alexis Hill, Esquire, Manager of LRS stated" there is a difference of reporting to a person vs. being harassed.

The dreadful adverse harassment that occurred on Monday, August 6, 2007 and has been continuous and occurred on various dates as indicated in Exhibit B, C, D, and E.

Plaintiff has tried to work reasonable as any reasonable human person could under the circumstances, but unlawful harassment and intentional discrimination just kept getting worse and plaintiff was constantly attacked verbally by all levels of management and the entire community by making statements in my presence that "they ***don't to against their paychecks but no employee or anyone from the management team intentionally adversely harassed Heather Leary*** whom stated lawsuit and MCAD for own personal self interest on Monday, August 6, 2007 or **Megan Leppert whom complained to the Executive Director about Heather Leary**. The entire community except for John Fumicelo and Georgia Katsoulomitis harassed plaintiff to cover up the Boston Bar Association/Boston Bar Foundation and unlawful harassment as defined by the law under Chapter 151B, The Civil Rights Act of 1964, and the Amended Civil Rights Act of 1991 – Griggs v. Duke Power Co. (1971) and Ward Cove Packing Co. V. Antonio (1989).

4

Exhibits B, C, D, and E. have also fostered and cultivated additional intentionally harassment leading up to the date of plaintiff's forced decision to leave the Boston Bar Association/Boston Bar Foundation on Monday, September 15, 2008 was due to the additional discrimination, retaliation, harassment.

1. On Wednesday, July 30, 2008 – plaintiff was coming into work and overheard Richard Page, Executive Director slander plaintiff by telling Patricia Mazurkiewicz, Human Resource Manager confidential information from plaintiff's hearing at Suffolk Superior court house on Wednesday, July 29, 2008. The Executive Director was not at the hearing, but breached true confidential information and had no right to violate plaintiff's civil right.

2. On Friday, August, 29, 2008 - Heather **intentionally harassed an Adverse Performance Evaluation on August 29, 2008 – See Exhibit G. Exhibit G contradicts plaintiff's actual current up to date work including Heather Leary's own compliment in an email dated Monday, May 12, 2008 at 9:56 a.m. – See Exhibit R – paragraph 2.**

3. September 2, 2008 – Heather Leary approached plaintiff and stated plaintiff must do whatever Heather states including supporting the vacant position of the former Member Relationship Coordinator, Jessica Hamilton and covering the work flow of Mohamed Mosales, Finance Assistant with exact same responsibilities whom currently decreased his hours from 3 days to 2 days beyond her control in a white superior mannerism. Plaintiff replied "plaintiff will work within legal requirements of the law without conflict of interest of job description. The plaintiff acknowledged the busiest season of the year and acknowledged that management does not decrease capital labor without a motive and plaintiff stated she will not be responsible for the shortage of staff.

4. On Tuesday, September 2, 2008 – Richard Page, Jr. Esquire and Heather Leary, Esquire, Director of Membership, and immediate supervisor adversely stopped speaking to plaintiff (Good Mornings) by creating and fostering a hostile environment because of plaintiff's hand written notations on plaintiff's Performance Evaluation – See Exhibit G and have not spoken during the whole time of employment during the month of September 2008 as previously spoken until plaintiff wrote her comments on Exhibit G.

5. On Tuesday, September 2, 2008 – Heather Leary, Esquire, Director of Membership, and plaintiff's immediate supervisor has been aggressively rolling her eyes at plaintiff until the day plaintiff resigned.

6. Monday, September 8, 2008 – Heather Leary, Esquire, Director of Membership, and plaintiff's immediate supervisor stated to plaintiff "that she was desperate and needed to

get another billing out because her job is on the line and needed to make a decision by Friday, September 12, 2008. Heather requested plaintiff to just add in her weekly War Report approximately the time it would take to finish up the remaining work for the month of August 2008 and to estimate a time when the September payments can be started and finished – See **Exhibit F**. Plaintiff mentioned that plaintiff could only humanly estimate, but can't be specific due to the shortage of staffing and busiest season. Plaintiff mentioned that plaintiff would go to the 2nd floor to see the work flow intentionally on hold by the Finance Department due to new end year procedures.

7. On Wednesday, September 10, 2008 – as noted from above paragraph 6 – plaintiff went to the 2nd floor where checks were intentionally on hold by the Finance Department due to the new end year procedure policy to obtain Kristen Deforest, Executive Assistant to Richard Page, Executive Director estimate count of check that are coming in by the day. Plaintiff obtained the count of 80-100 checks per day.

8. On Wednesday, September 10, 2008 – Heather Leary, Esquire, Director of Membership, and plaintiff's immediate supervisor approached plaintiff in plaintiff's cubicle during a business call that plaintiff had with Artika Wadhwa at 2:56 p.m. and ended at 3:04 p.m. where Heather waited until completion of call and again stated "her (heather) job is on the line and demanded a count disrespectfully, white superior tone, and malicious stated plaintiff to whatever Heather stated. Plaintiff told Heather to speak correctly for the answer and Heather requested the count again and plaintiff gave the count that Kristen Deforest quoted to plaintiff on September 10, 2008 which was 80-100 checks per day. **Please note that Kristen Deforest would be the most knowledgeable person to answer the question especially since Kristen Deforest is the check tracker and the software takes an electronic count daily and Heather can see the figures in Aptify too – see Exhibit X. Please note that Heather requested check count that did not change in Exhibit W which was the day plaintiff resigned. Again, plaintiff provided the response which was not interchangeable and Heather could of simply asked Kristen herself, but focused on the plaintiff whom gave all responses to the best of plaintiff's abilities and knowledge obtain from Kristen Deforest, Executive Assistant to Richard Page and check tracker.**

9. On September, September 10, 2008 – Approximately around 9:30 a.m. plaintiff went to the business office to have a business conversation with Kathleen McCarren and upon leaving overheard Richard Page, Executive tell his assistant Kristen to speak to plaintiff from now on.

10. On Friday, September 12, 2008 - plaintiff provided an estimate in her Weekly War Report on Friday, September 12, 2008 of a time frame to process work which was email directly to Heather Leary on Friday, September 12, 2008 – **See Exhibit F – page 2.**

11. Thursday, September 11, 2008 – **Richard Page, Jr., Esquire, Executive** Director of BBA/BBF stated to Aaron Ostrow, Assistant Editor on the 3rd floor directly following the Annual Meeting Luncheon directly across from plaintiff's cubicle that "**Aaron you notice that I only spoke to you on the 3rd floor and Aaron responded Yes, I did notice that you only spoke to one person on the 3rd floor.** Your honor please note that only three people were on the 3rd floor at the time which included plaintiff, Aaron, Ostrow, and Richard Page, Esquire and Executive Director.

12. **Friday, September 12, 2008** – Approximately around 2:30-3:00 p.m., plaintiff went to the 4th floor to pick up paperwork from the two LRS interns, Bill and Ian and overheard Heather Leary and Richard Page in front of the plaintiff, two LRS interns, Katherine "Katie" Elmore, Jennifer Cedor, Karen Douglas, Anna Frank, and Megan Leppert, Esquire, Manager of Events argue about plaintiff near the coffee table, refrigerator, and LRS space opening like a window: **Heather Leary argued to Richard Page that "she is sick of Richard's inappropriate comments and confessed that Richard was aware of the harassment like everyone else and stated that she (Heather) would take Richard down with her if she was ever fired over the EEOC finding or court actions because Richard shouldn't have let color and race get in the way.** Heather also stated in front of all witnesses as noted above that if **plaintiff drops dead or plaintiff wins lawsuit she will drag Richard Page down with her and Richard Page responded "now he know what Jessica Hamilton meant about dragging Heather Leary down. Heather also made inappropriate indirect comments of other staff members on the 4th floor including Katherine Elmore, Jennifer Cedor, and Megan Leppert.**

13. Monday, September 15, 2008, plaintiff resigned after opening an email – See Exhibit Z from Heather Leary that initiated from the email trail on Thursday, September 11, 2008 – See Exhibit W and knowing that Heather was just assigning a task that was truly not a necessity to the BBA/BBF. – I just gave a professional estimate as noted on Weekly Activity Report as request by Heather Leary – See Exhibit F and verbally on Wednesday, September 10, 2008. Exhibit F along with all of the Exhibits starting from Exhibit A - Z was just the last straw that broke the camels back due to the fact that I have given more than expected by the BBA/BBF and the entire management teams know the truth as well as coworkers – See Exhibit R – paragraph 2. Upon arrival, I have been giving praise about work performance and received $2,000.00 after six months for work performance and $1,200.00 after completing one year. The increase in pay was a smoke screen to

cover up Heather Leary's intentional discrimination and adverse performance evaluation on Friday, August 29, 2008 – See Exhibit G.

14. On Monday, September 15, 2008, plaintiff remembered the day of Friday, June 21, 2008, Heather Leary and Bruce Hiltunen stated in front of the entire company during a mandatory meeting re: Strategic Planning Meeting that the plaintiff has been doing an outstanding job upon arrival and has added many attributes and changes to the way the BBA/BBF handles data entry. Heather and Bruce both stated "plaintiff has always done more than BBA/BBF's expectation of plaintiff's role in front of all staff at the mandatory meeting re: Strategic Planning Meeting. Heather Leary intentionally demonstrated an adverse performance evaluation on August 29, 2008 – See Exhibit G Your honor please note plaintiff continued working as usual up to the last day of employment.

15. On September 15, 2008, plaintiff exhausted all resources to deter unlawful harassment by the BBA/BBF. Plaintiff feels all resources and company policies has failed the plaintiff by not taking any action to remedy or stop the continuous unlawful harassment – See Exhibit I, Exhibit J, exhibit K, and Exhibit L through N.

16. On September 15, 2008, plaintiff could no longer bear the structure of Exhibit Q which has the conductor, orchestrator, and worst offender Richard Page, Esquire, and Executive Director at the top of the organizational chart leading all of the harassment and statement made on Wednesday, July 30, 2008 by Richard Page, Jr. Esquire and Executive Director of BBA/BBF.

17. On September 15, 2008 even though plaintiff resigned please know that an additional complaint was filed against the BBA/BBA – See Exhibit P.

18. On September 15, 2008 plaintiff was disgusted with the two death threats previously made to plaintiff by Jessica Hamilton (Winter 2008), and jointly made by Christopher LaVancher and William Santry, Supervisor of Facilities on Tuesday, July 15, 2008 morning at Mohamed's cubicle where Christopher LaVancher was working on Mohamed's computer the day after plaintiff complained to former BBA/BBF president on Monday, July 14, 2008 at 1 p.m. at an offsite location – See Exhibit N. Please acknowledge that Mohamed was not in the area and only plaintiff, Christopher, and William were present.

19. On September 15, 2008, plaintiff remembered during the month of January 2008, plaintiff positively identified the representing counsel for the Winsor School inform Bruce Hiltunen, Director of Finance & Administration at the Boston Bar Association in the Adam's Room that Wendy Cassidy of the Massachusetts Commission of

8

Discrimination intentionally lied about my case and Morrison V. Winsor should of actually been probable causes.

20. On September 15, 2008, plaintiff's realization of plaintiffs violation of the 1st Amendment of the Unites States Constitution and Violation of the Civil Rights Acts of 1964 and 1991, Blow the Whistle employee, and pure fact that the complaints involve immediate supervisor and executive director was deemed to harmful to my emotional distress, discomfort, humiliation, and exceptional work above my capabilities were just fun and games initiated the management team of the Boston Bar Association.

21. **Important Notation**: Please know that there were 9 new policies that primarily impacted only plaintiff due the actual number of hours worked vs. Mohamed Mosales and Joanne O'Hara – See the 9 various new policies by date in Exhibit U. Please note the first one only applies to plaintiff as plaintiff was the only person to work on the data entry of sponsor firms and the email from Bruce Hiltunen on Friday, June 13, 2008 was not confusing, but a new policy that effected plaintiff only. Please know that there were policies changing by the day and only 9 were actually typed out – see Exhibit U.

- Georgia Katsoulomitis, Esquire, and former employee and John Fumicelo, Consultant, and former employee will be the only two employees to tell the truth.

- Jessica Hamilton, former employee has confessed to Patricia Mazurkiewicz, Human Resource Manager the truth in April 2008. Also, Jessica stated the day Jessica goes down is the day Jessica will drag Heather down with her.

- Heather Leary is now stating the day Heather goes down Heather is dragging Richard Page down with her.

- There are numerous other comments to mention, but to troubling to go over and plaintiff did the best of her capabilities to highlight the most important fact that impacted all of the adverse hostile treatment. The entire investigation internally and externally was covered up.

22. See next page with relief request.

## Relief

WHEREFORE, the plaintiff demands judgment against the defendants for damages and such other relief as this court deems just.

WHEREFORE, the plaintiff demands a trial by jury under Rule 38(b) of the Federal Rules of Civil Procedure.

WHEREFORE, the plaintiff demands if applicable to appoint plaintiff with a counsel.

WHERFORE, the plaintiff demands the courts to **reverse** the Equal Employment Opportunity Commission's decision due to the lack of jurisdiction over the matter pursuant to 28 U.S.C. 1332 and jurisdiction to honor plaintiff a judge with a trial to measure the specific and circumstantial evidence.

WHEREFORE, the plaintiff demands thorough investigation as to why plaintiff civil rights to work in a harassed free environment were covered up by management team of BBA/BBF.

*Cathy Morrison*
Cathy Morrison
27 Colonial Avenue
Boston, Massachusetts 02124

Telephone 617-474-2364

confessed to sabotaging the work flow for ~~her~~ Joanne's losses. However, Jennifer Smith spoke to plaintiff like she was a dog and made false accusations that plaintiff was not working. Later, Jennifer confessed to Patricia Mazurkiewicz in Patricia's office with the door open that she lied on plaintiff and should have not done such an act because of the word *"Queen Bee"*. The word *"Queen Bee"* is systematically traveling from employer to employer to promote retaliation, harassment, and a hostile work environment.

Bold On Monday, August 6, 2007 approximately around 2 p.m. Plaintiff, Cathy Morrison was working quietly and professionally at her original cubicle on the 3rd floor. Plaintiff was working with John Fumicello, (former employee) ~~and~~ consultant and Christopher "Chirs" LaVancher, Database & Information Systems Manager to discuss the current problems with the work flow and previous software glitches that occured due to the fact that BBA/BBF were i Cancelled their contract with GoMember's software since they purchas the new software in late spring of 2008.

1. Heather Leary, Esquire, Director of Membership, and plaintiff's immediate supervisor was called to the 3rd floor by Deborah Gibbs, Esquire, and Director of Government Relations. Heather Leary, Esquire, Director of Membership, and plaintiff's immediate supervisor maliciously started slandering and making false statements about plaintiff in front of plaintiff, Deborah Gibbs, Esquire, and Director of Government Relations, Georgia Katsoulomitis, Esquire, and Managing Director of BBF/Assistant Director of BBA, Maria Fernandes, Administrative Assistant to Deborah Gibbs, Kathleen Tighe, Administrative Assistant to Georgia Katsoulomitis, John Fumcillo, (former employee) Consultant, Christopher LaVancher, Database & Information Systems Manager that plaintiff was liar, dishonest, not working, and Heather Leary boldly stated that she had only one motive to hire plaintiff which was to pay plaintiff back for Morrison v. Winsor case pending in Suffolk Superior court house and fire to plaintiff because of plaintiff's color "black" and race and Heather Leary boldy bragged that she will be supported by retaliating against plaintiff because Heather proclaimed to be white racist/superior and had Jessica Hamilton (black), Member Relations Coordinator word to be in on the set up of getting plaintiff fired and shielding that race and color was an issue.

2. Heather Leary, Esquire, Director of Membership and immediate supervisor of plaintiff started bragging about suing the Boston Bar Association because she was sick of Richard Page Jr., Esquire, and Executive Director of BBA/BBF and Bruce Hiltunen, Director of Finance & Administration bullshit and was going to use her gender and privileges of being white against them and everybody except plaintiff knows black people never win at the EEOC/MCAD, but white people do win. Heather again stated "Jessica Hamilton gave her the word to set up plaintiff since Jessica too was retaliating for Jessica's mother whom the plaintiff does not even know.

2

| U.S. Department of Justice<br>United States Marshals Service | PROCESS RECEIPT AND RETURN<br>See Instructions for "Service of Process by the U.S. Marshal"<br>on the reverse of this form. |
|---|---|

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| (A) Cathy Morrison | (B) |
| **DEFENDANT** | **TYPE OF PROCESS** |
| (C) Boston Bar Association | Civil Law Suit (D) |

SERVE → NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
(E) Boston Bar Association - Attn: Richard Page

AT — ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
(F) 16 Beacon Street Boston, MA 02108

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

(G) Cathy Morrison
27 Colonial Avenue
Dorchester, MA 02124

| Number of process to be served with this Form - 285 | (H) |
|---|---|
| Number of parties to be served in this case | (I) |
| Check for service on U.S.A. | (J) |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

(K)

Signature of Attorney or other Originator requesting service on behalf of:
(L) Cathy Morrison,   (M) ☒ PLAINTIFF  ☐ DEFENDANT
TELEPHONE NUMBER: 617-(N)474-2364
DATE: (O) 10/10/08

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin<br>No. ___ | District to Serve<br>No. ___ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | | | | | |

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

| Name and title of individual served (if not shown above) | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode |
|---|---|
| Address (complete only if different than shown above) | Date of Service   Time   am / pm |
| | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or Amount of Refund |
|---|---|---|---|---|---|
| | | | | | |

REMARKS:

| PRIOR EDITIONS<br>MAY BE USED | **1. CLERK OF THE COURT** | FORM USM-285 (Rev. 12/15/80) |
|---|---|---|